IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA                          OPINION AND ORDER

v.                                        12-cr-90-wmc
                                                  14-cv-38-wmc
SAMUEL DEWITT

---

Defendant Samuel Dewitt has filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct the sentence he received on January 24, 2013, in *United States v. Dewitt*, Case No. 12-cr-90-wmc.   The respondent has filed a brief in opposition and Dewitt has filed a reply.   After considering the parties' briefs, all of the pleadings, and my own recollection of the underlying proceedings, Dewitt's motion will be denied for the reasons set forth below.

BACKGROUND

In September and November 2011, an undercover agent downloaded images containing child pornography from an IP address that was traced to Dewitt's residence. On December 15, 2011, officers executed a search warrant at the residence and seized computers, hard drives, flash drives, cell phones, a video gaming console, memory cards, a camera, a webcam and CDs.   Later that same day, Dewitt went to the local sheriff's department and turned in his cell phone, which was not seized during the search. Forensic analysis revealed that Dewitt possessed approximately 1150 images and 34 videos containing child pornography.

1

During an interview at the scene, Dewitt admitted having a secure wireless network that he used to download child pornography.   Dewitt also admitted having a prior conviction for possession of child pornography, explaining that he returned to viewing child pornography because it bothered him that he viewed it before.   Dewitt also advised agents that he had both short- and long-term memory issues.

On July 11, 2012, a grand jury in this district returned a two-count indictment against Dewitt.   Count one charged Dewitt with distributing child pornography and count two charged him with possession of child pornography.   Initially, Dewitt agreed to plead guilty to count one of the indictment pursuant to a written agreement with the government.   A hearing to take his plea was set for November 9, 2012, and then cancelled at Dewitt's request.

On November 29, 2012, Dewitt pled guilty to count two of the indictment under the terms of a second proposed plea agreement.   Pursuant to that agreement, the parties agreed to the following calculations under § 2G2.2 of the United States Sentencing Guidelines: a base offense level of 18; a two-level increase because the material involved a minor who had not attained the age of 12; a two-level increase because the images were distributed; a four-level increase because the images depicted sadistic or masochistic conduct; a two-level increase because the conduct involved the use of a computer; and a five-level increase because the defendant possessed more than 600 images.   Dewitt reserved the right to argue that the two-level increase for use of a computer overstated the

severity of the offense.   By signing this second agreement, Dewitt also waived his right to appeal.

In preparing the presentence report ("PSR"), the probation office agreed with the guidelines calculation set forth in the parties' plea agreement.   After factoring in all of the enhancements and a reduction for acceptance of responsibility, the probation office calculated Dewitt's total offense level at 30.   With a criminal history category of II, Dewitt faced a range of 108-135 months' imprisonment under the advisory guidelines, which was capped at a statutory maximum of 120 months.   At sentencing on January 24, 2013, this court ultimately declined to give Dewitt a two-level increase for use of a computer for reasons set forth on the record.   (Dkt. # 36, *Sent. Trans.* at 5.)   With Dewitt's total offense level dropping to 28, the court determined that Dewitt faced an advisory guideline range of 87-108 months in prison.   (*Id.*)   The court ultimately sentenced Dewitt in the middle of that range, giving him 96 months in prison to be followed by a 25-year term of supervised release.   (*Id.* at 10.)

Dewitt now contends that he is entitled to relief pursuant to 28 U.S.C. § 2255, because he was denied effective assistance of counsel in connection with his guilty plea. In particular, Dewitt contends that his attorney, Federal Public Defender Michael Lieberman, coerced him into accepting the proposed plea agreement by threatening to have him committed indefinitely to a mental institution.   Dewitt contends further that he was denied effective assistance when Lieberman failed to do the following:   (1) to discover exculpatory evidence; (2) to file a motion to suppress evidence seized during an unlawful

search; (3) to file a motion to suppress statements that he made to law enforcement during the search; and (4) to investigate and present mitigating evidence for purposes of sentencing.   Dewitt also contends that the court erred in its application of the sentencing guidelines applicable to child pornography offenses.

OPINION

To obtain relief under 28 U.S.C. § 2255, a prisoner must show that the district court sentenced him "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack."   Relief under § 2255 is appropriate only for "'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'"   *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)).

## I.   Dewitt's Guilty Plea

In this instance, Dewitt contends that he is entitled to relief pursuant to § 2255 because his defense counsel failed to advise him of all the terms of the plea agreement and coerced him to plead guilty.   "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'"   *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (citation omitted)).   Claims for ineffective assistance of counsel are analyzed under the

well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).   To prevail under the *Strickland* standard generally, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency.   *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).   To prevail on an ineffective-assistance claim in the context of a guilty plea specifically, a defendant must show that:   (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial.   *Bethel v. United States*, 458 F.3d 711, 716-17 (7th Cir. 2006) (citing *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985); *Strickland*, 466 U.S. at 687-88)).

Dewitt contends that his guilty plea was unknowingly made because Lieberman did not inform him that the plea agreement contained (1) a requirement that he submit to "penile plethysmograph testing" and (2) an appellate waiver.   The government argues that this allegation is without merit for two reasons.   First, the plea agreement contains no requirement for penile plethysmograph testing.   (Dkt. # 18, *Plea Agreement*.)   Second, Dewitt was advised in the written plea agreement itself, which he signed after consulting with counsel, *and* again orally at the time of the hearing that his guilty plea would result in a waiver of the right to appeal his conviction and the imposition of any sentence of 120 months.   (Dkt. # 35, *Hearing Trans*. at 10.)   Indeed, Dewitt acknowledged in open court that he understood the terms of the written plea agreement, including the appellate waiver.   (*Id*. at 15.)   Dewitt's solemn declarations in open court carry a strong

5

presumption of verity.   *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).   Based on his record, Dewitt cannot show that his guilty plea was unknowingly made.

Dewitt contends further that he involuntarily accepted the terms of the plea agreement because Lieberman threatened to have him committed to a mental institution for an indefinite period of time.   The government argues persuasively that this contention is not only unsupported by objective evidence, but is so incredible that the court should completely disregard it.   Certainly, Dewitt's claim is contradicted by his statements at the plea hearing, during which Dewitt assured the court that nobody had threatened him or forced him to plead guilty.   (Dkt. # 35, *Plea Hearing Trans*. at 15.)   Dewitt offers no explanation for this glaring contradiction.   Because Dewitt's motion can only succeed if he committed perjury at the plea hearing, and he presents no compelling explanation for the contradiction, this claim is one that can be "rejected out of hand[.]"   *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) (citing *United States v. Stewart*, 198 F.3d 984 (7th Cir. 1999); *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995); *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987)).

## II.   Newly Discovered Evidence

Dewitt also presents a one-page letter from his stepson, Joshua Kortes, who indicates that he felt coerced into giving a statement to law enforcement that implicated Dewitt in the charged offenses.   Dewitt claims this letter constitutes "newly discovered evidence" relevant to his case.   Dewitt further contends that Lieberman's failure to discover this "evidence" constituted ineffective assistance of counsel.   More particularly,

Dewitt contends that Lieberman's claimed failure to interview Kortes about his statement to law enforcement constitutes ineffective assistance of counsel.

Certainly, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Strickland*, 466 U.S. at 690. However, a defense attorney is not obligated to track down each and every possible witness or to personally investigate every conceivable lead. *Sullivan v. Fairman*, 819 F.2d 1382, 1391 (7th Cir. 1987). Even the after-the-fact letter presented by Dewitt, in which Kortes principally expresses remorse for implicating Dewitt, does not disclose facts that would trigger a duty by defense counsel to investigate further, particularly given Dewitt's own, much more damning admissions.

The government also notes that the interview between Kortes and law enforcement was recorded, that it contains no threats or coercion, and that the letter from Kortes provides no exculpatory information. The court agrees. Read generously, Kortes merely apologizes for providing information that demonstrated Dewitt's guilt. More importantly, Kortes does not recant his statements to law enforcement or accept responsibility for downloading the child-pornography that forms the basis for the criminal charges against Dewitt.

In contrast, *Dewitt* admitted downloading the images. Even assuming that Lieberman was deficient for failing to interview Kortes, therefore, Dewitt cannot demonstrate that the information contained in the letter was exculpatory or material to the issue of guilt/innocence. Thus, there is no likelihood that discovery of this evidence

would have led counsel to change his recommendation as to the plea or that it would have changed the outcome of a trial.  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).   Based on this record, Dewitt has failed to demonstrate even arguable prejudice from this alleged deficiency in his counsel's performance.

## III.    Failure to File a Motion to Suppress Evidence

Dewitt further contends that Lieberman erred in failing to file a motion to suppress evidence seized by law enforcement in violation of the Fourth Amendment.   To prevail on this a claim, a defendant is required to prove that a motion to suppress would have been granted, had one been filed.   *See United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005) (citing *Owens v. United States*, 387 F.3d 607, 610 (7th Cir. 2004); *United States v. Stewart*, 388 F.3d 1079, 1084 (7th Cir. 2004)). In other words, to satisfy the *Strickland* test where the asserted attorney error is a defaulted Fourth Amendment claim, a defendant must first prove that the Fourth Amendment claim is meritorious.   *See Stewart*, 388 F.3d at 1084 (citing *United States v. Jackson*, 103 F.3d 561, 573 (7th Cir. 1996)); *see also Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.").

Here, Dewitt appears to claim that the search warrant for his computer and computer-related equipment was overbroad because it said nothing about searching hard

drives or individual computer files.   This level of detail, however, is not required for a warrant to be valid.   Dewitt does not demonstrate, therefore, that the warrant was impermissibly overbroad or so lacking in particularity as to constitute a general warrant. *See Shell v. United States*, 448 F.3d 951, 957 (7th Cir. 2006) (noting that "the Fourth Amendment does not have a general particularity requirement, but merely requires particularity in a warrant's descriptions of the 'place to be searched' and the 'persons or things to be seized.'") (quoting *United States v. Grubbs*, 547 U.S. 90, 126 S. Ct. 1494, 1500 (2006)).   Even if it were, there appears no question that the government was within its rights to *seize* the hard drives and computer files, nor that a further warrant would have inevitably been issued to allow the government to inspect their content.   *See United States v. Stotler*, 591 F.3d 935, 940 (7th Cir. 2010) ("The inevitable discovery doctrine holds that even an illegally seized item need not be suppressed if the government can prove by a preponderance of the evidence that the officers would have discovered it by lawful means.") (citing *Nix v. Williams*, 467 U.S. 431 (1984)).   Accordingly, the court is unable to discern *any* viable basis to challenge the government's execution of the search warrant here.   In any event, Dewitt has neither established that a Fourth Amendment violation occurred in this case nor that a motion to suppress would have been successful.

## IV.   Failure to File a Motion to Suppress Statements

Dewitt similarly contends that Lieberman was deficient in failing to file a motion to suppress statements that he made to law enforcement during the execution of the search warrant.   Dewitt contends that he asked for an attorney at one point while the search was

being conducted, but that one was not provided.   Dewitt argues further that his statements were made in response to police interrogation without the benefit of warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966).

The government notes that Dewitt does not say that he advised Lieberman of a *Miranda* violation or that he asked him to file a motion to suppress his statements to law enforcement.  On this basis, the government argues that Dewitt fails to demonstrate deficient performance on Lieberman's part.

The government argues further that Dewitt does not establish deficient performance or actual prejudice because he does not show that a motion to suppress would have been successful.[1]   More specifically, the government points out that Dewitt fails to establish he was even in custody at the time the statements were made.  *See Illinois v Perkins*, 496 U.S. 292, 296 (1990) (the protections found in *Miranda* only apply to statements that are the product of custodial interrogation); *United States v. Pelletier*, 700 F.3d 1109, 1114 (7th Cir. 2012) (same).

Where *Miranda* is concerned, "custody" is a "term of art that specifies circumstances that are thought generally to present a serious danger of coercion."   *Howes v. Fields*, — U.S. —, 132 S. Ct. 1181, 1189 (2012).   A person is in custody for purposes of *Miranda* when their movement is restrained to the degree associated with a formal arrest. *See Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam); *United States v. Smith*, 3 F.3d 1088, 1097 (7th Cir. 1993).   The

---

[1] The Fifth Amendment privilege against self-incrimination provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.

determination whether a person is in custody must be made by looking at the totality of the circumstances surrounding the encounter. *United States v. Podhorn*, 549 F.3d 552, 556 (7th Cir. 2008) (citation omitted).  Relevant factors to consider in making this determination include whether the defendant was free to leave, the purpose of the interview, where the interview took place, and the length of interrogation.  *Id*.  Other factors that can be considered are whether the suspect agreed to speak with the officers, whether there was a threatening presence of several officers and a display of weapons or physical force, and whether the officers' tone of voice was such that their requests were likely to be obeyed.  *See United States v. Thompson*, 496 F.3d 807, 810-11 (7th Cir. 2007) (citation omitted).

Here, Dewitt was reportedly interviewed by Detective Parenteau of the Douglas County Sheriff's Department while other officers executed a search warrant on his residence, looking for evidence of child pornography.   Dewitt acknowledges that Detective Parenteau told him that he was not under arrest and that he was only going to ask some routine questions.   Nevertheless, Dewitt, who reportedly suffers from post-traumatic stress disorder, claims he *felt* intimidated and frightened by Detective Parenteau, who continued to question him after he asked for a lawyer.   Dewitt further notes that:   (1) the search was conducted by four or five police officers bearing side-arms; (2) he was made to wait in a bedroom for an hour and a half with the door closed; and (3) he was not allowed to touch his college homework.   While Dewitt acknowledges that he was generally allowed to move about in his apartment, he also notes that his movements

11

were "continually monitored" by officers on the premises.   Finally, when Dewitt asked if he could walk his dog, he was given permission to leave the apartment.

While Dewitt's movements may have been constrained while the search took place, his overall description does not match the type of restraint required for custodial interrogation.   *See United States v. Valley*, 755 F.3d 581, 585-86 (7th Cir. 2014) (defendant was not in custody for purposes of *Miranda* during a five-hour period while agents searched his residence for evidence of child pornography where agents never drew their guns or threatened defendant and he was told at the outset of the search that he was free to leave); *United States v. Salyers*, 160 F.3d 1152, 1159-60 (7th Cir. 1998) (defendant not in custody during execution of search warrant at home when he was not restrained and was not told he could not leave); *United States v. Fazio*, 914 F.2d 950, 955 (7th Cir. 1990) (defendant was not in custody when officers asked him to sit in a particular office in his own restaurant while they executed a search warrant in an adjacent room; defendant was not locked in the room or physically restrained or threatened with weapons).   Absent a showing that his statements were the product of custodial interrogation, he has not demonstrated that the *Miranda* warnings were required nor that his defense counsel had a basis for filing a motion to suppress his statements to police.   Accordingly, Dewitt demonstrates neither deficient performance nor actual prejudice from his attorney's failure to file a motion to suppress his statements to Detective Parenteau.

**V.    Failure to Investigate and Present Mitigating Evidence**

Dewitt next contends that Lieberman failed to investigate and present mitigating evidence for purposes of sentencing. In particular, Dewitt contends that Lieberman failed to mention his "dysfunctional background and unfortunate life history which involved a troubled childhood, inability to maintain friends, dropping out of school, two failed marriages, inability to maintain lengthful [*sic*] employment and how [he] sought counseling immediately after his interrogation" by police in this case.

"When challenging his sentence, a [defendant] must show that but for counsel's errors, there is a reasonable probability that he would have received a different sentence." *Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010) (citing *Strickland*, 466 U.S. at 695). When engaging in the probability inquiry, a court should "consider 'the totality of the available mitigation evidence — both that adduced at trial, and the evidence adduced in the [later] proceeding' — and 'reweig[h] it against the evidence in aggravation.'" *Porter v. McCollum*, 558 U.S. 30, 41 (2009) (quoting *Williams v. Taylor*, 529 U.S. 362, 397-98 (2000)).

Most of the mitigating information mentioned by Dewitt was set forth in the PSR. The court considered information that Dewitt was raised by a single mother as one of nine children; that his mother as an alcoholic who was rarely home; and that the family struggled financially and was supported by welfare.  The court also noted that Dewitt's reports of his sexual abuse when he was ten years' old, while he and his mother were living in a homeless shelter; that Dewitt dropped out of school after tenth grade, eventually earning a General Educational Development ("GED") certificate; and that he eventually

13

completed a bachelor's degree and a master's degree through an online education program. Of course, other facts were also considered, including that Dewitt enlisted in the army in 1999, but was given a "bad conduct discharge" in 2007, after he was convicted of possessing child pornography; that following his discharge from the service, Dewitt's employment record was sporadic; that Dewitt was married and divorced twice; and that Dewitt reportedly suffered head trauma as the result of a car accident in 2006, and was diagnosed with "post concussive disorder."

The only arguably "new" piece of information identified by Dewitt is that he now claims to have had some counseling from a caseworker employed by Lutheran Social Services, following his arrest in this case, but Dewitt provides no details surrounding that claim. Most importantly, Dewitt does not say whether he sought counseling related to his possession of child pornography. Notable also is Dewitt's conflicting statement to the probation officer who prepared the PSR that he had never participated in mental health counseling, a statement he chose not to challenge before sentencing. Nor did Dewitt address his conduct related to possessing child pornography while he was in the military. (Dkt. # 22, ¶ 65.) Dewitt also conceded at the sentencing hearing that he had not sought counseling for his possession of child pornography since receiving a dishonorable discharge from the service. Dewitt's conclusory allegation does not establish that he sought counseling as a sex offender who had been convicted of possessing child pornography prior to his sentencing in this case.

14

I would be remiss not to note at this point that having presided over many criminal proceedings since taking the bench nearly five years ago, and regularly observing firsthand the consistently outstanding defense provided by Federal Defender Lieberman to his clients, Dewitt could not have asked for and this court could not have found a more diligent attorney to represent him in this case.   Moreover, as reflected in the record at sentencing, I attempted to consider carefully each of the factors required by 18 U.S.C. § 3553(a) and the agreed-upon enhancements outlined in the parties' plea agreement when arriving at a reasonable sentence in this case.   After considering the totality of the available mitigation evidence, Dewitt has not demonstrated that there is a reasonable probability that he would have received a different sentence if his defense counsel had done more.   *See Griffin*, 622 F.3d at 844.   Accordingly, he does not demonstrate that he was denied effective assistance of counsel in connection with his sentencing or, for that matter, any other portion of his criminal defense.

## VI.   Errors in the Sentence

Apart from his ineffective-assistance claims, Dewitt contends further that the court erred in its application of the sentencing guidelines applicable to child pornography offenses. Specifically, Dewitt contends that the court erred in applying § 2G2.2 of the Sentencing Guidelines, which governs possession of material involving the sexual exploitation of a minor.   Dewitt reasons that § 2G2.2 is fatally arbitrary because it fails to differentiate between mere viewers of child pornography and makers or manufacturers of

it.   Dewitt contends further that the 25-year term of supervised release constitutes "cruel and unusual punishment" in violation of the Eighth Amendment.

Claims concerning application of the sentencing guidelines are typically not cognizable in a proceeding under § 2255.   *See Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Scott v. United States*, 997 F.2d 340, 342 (7th Cir. 1993)).   In that respect, this type of claim concerns a non-constitutional issue that could have been raised on direct appeal.   An issue not raised on direct appeal is barred from collateral review absent a showing of both good cause and actual prejudice from the failure to raise those claims on direct appeal, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice.   *Reed v. Farley*, 512 U.S. 339, 354 (1994) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).   Dewitt waived an appeal under the terms of his voluntary guilty plea here.   Assuming that Dewitt has cause for failing to pursue an appeal from his sentence, he has wholly failed to establish prejudice nor show that he would have prevailed if an appeal had been filed on his behalf.

While it is true that courts have criticized U.S.S.G. § 2G2.2 as "seriously flawed," particularly where its guideline enhancements are concerned, *see, e.g.*, *United States v. Tews*, No. 09-cr-309, 2010 WL 1608951, *3 (E.D. Wis. Apr. 20, 2010) (collecting cases), the Seventh Circuit has concluded that these flaws do not render U.S.S.G. § 2G2.2 invalid, *see United States v. Huffstatler*, 571 F.3d 620, 622-24 (7th Cir. 2009).   Indeed, the Seventh Circuit has commented further that "district courts are certainly free to disagree with the child pornography Guidelines as applied to a particular case as long as the sentence

16

imposed is reasonable." *United States v. Pape*, 601 F.3d 743, 745 (7th Cir. 2010). The enhancements that increased Dewitt's sentence here were part of a negotiated plea agreement in this case. Dewitt, who concedes that he had a prior conviction for possessing child pornography from the military, neither disputes his placement in criminal history category II nor shows that any of the enhancements applied to him were unwarranted. Moreover, Dewitt makes no attempt to show that the court's calculation of the advisory guideline range was incorrect or that his sentence was unreasonable.

Dewitt's Eighth Amendment claim is also easily dispatched. "The Eighth Amendment prohibits punishments which involve the unnecessary and wanton infliction of pain, are grossly disproportionate to the severity of the crime for which an inmate was imprisoned, or are totally without penological justification." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) (citations omitted); *see also Solem v. Helm*, 463 U.S. 277, 284 (1983) (The Eighth Amendment cruel and unusual punishment clause prohibits "not only barbaric punishments, but also sentences that are disproportionate to the crime committed.").

By statute, the applicable term of supervised release was not less than five years with a maximum term of life. *See* 18 U.S.C. § 3583(k). The Sentencing Guidelines recommend the maximum term of supervised release for a sex offense. *See* U.S.S.C. § 5D1.2(b)(2). Nevertheless, the court elected to impose a 25-year term. As the court stated at sentencing, the 25-year term of supervised release was also "subject to modification . . . should the defendant's future conduct warrant it." (Dkt. # 36, *Sent.*

17

*Trans.* at 11.)   Given the amount of child pornography found in Dewitt's possession, the fact that this was Dewitt's second conviction for possession of child porn, the amount of such porn, and the age of the children, Dewitt cannot show that a 25-year term of supervised release was "grossly disproportionate" to the gravity of the offense or totally without penological justification, nor has he established that his sentence violates the Eighth Amendment.

Because the record clearly demonstrates that Dewitt is not entitled to relief, an evidentiary hearing is not required. *Lafuente v United States*, 617 F.3d 944, 946 (7th Cir. 2010); *Politte v. United States*, 852 F.2d 924, 931 (7th Cir. 1988).   Accordingly, Dewitt's motion pursuant to 28 U.S.C. § 2255 will be denied.

**VII.    Certificate of Appealability**

Under Rule 11 of the Rules Governing Section 2255 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner.   To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004).   This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case because the question is not

18

a close one. For the reasons stated, reasonable jurists would not debate the decision that defendant's motion should be denied because his claims are without merit.   Therefore, no certificate of appealability will issue.


ORDER

IT IS ORDERED that:

1.  Defendant Samuel Dewitt's motion to vacate, set aside or correct sentence is DENIED.

2.  A certificate of appealability is also DENIED.   Defendant may, if he wishes to do so, seek a certificate from the court of appeals under Fed. R. App. 22.

Entered this 31st day of October, 2014.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge

19